IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | No. 3:04-CR-178 (VARLAN/GUYTON) |
| MARCUS BLAIR, Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned, pursuant to 28 U.S.C. § 636(b), for consideration of the Motion To Dismiss Indictment [Doc. 10] filed by the defendant, Marcus Blair ("Blair"), and the government's Response in opposition [Doc. 11]. The Court heard oral argument on this Motion on February 14, 2005. Assistant United States Attorney Tracee Plowell ("Plowell") was present representing the government. Assistant Federal Community Defender Jonathan A. Moffatt ("Moffatt") was present representing the defendant. Blair also was present. The defendant [Doc. 19] and the government [Doc. 20] have filed post-hearing briefs. The defendant asserts that the prosecution in the present case constitutes a breach of the plea agreement which Blair made with the government in a prior case. The government argues that there has been no breach of the earlier plea agreement.

## I. BACKGROUND

On June 15, 2004, Blair was charged in an Indictment with violating 18 U.S.C. § 922(g)(6) in October 2003, by possessing a rifle and ammunition after a dishonorable discharge from the military [3:04-CR-88, Doc. 1]. On July 19, 2004, the undersigned conducted an initial

appearance and arraignment on the said Indictment, setting the case for trial before District Judge Thomas A. Varlan on September 23, 2004 [3:04-CR-88, Doc. 4]. Plowell was present for the government. Moffatt was present for the defendant, and Blair was present. [3:04-CR-88, Doc. 4]. The parties stipulate that Pre-trial Services Officer April Bradford ("Bradford") was present at the July 19, 2004 proceeding. The parties further stipulate that prior to, or during, the hearing, Bradford gave a pretrial services report on Blair to Plowell and Moffatt. The report showed that Tennessee state charges were filed against Blair in March 2004 for the offense of the possession of crack cocaine for resale. Blair was brought to this Court for his arraignment by way of a writ from state custody. [3:04-CR-88, Doc. 3].

On August 20, 2004, defendant executed a plea agreement ("the Plea Agreement") with the government in the case of 3:04-CR-88 [3:04-CR-88, Doc. 13]. On September 8, 2004, the Plea Agreement was signed by Moffatt and Plowell, and then it was filed with the Court along with the entry of Blair's guilty plea. The sentencing hearing was set for December 6, 2004.

On page 5 of the Plea Agreement is the following provision:

> 12. The United States agrees that this plea agreement constitutes the full disposition of the known non-tax federal charges within the Eastern District of Tennessee.

The possession with intent to resell crack cocaine is a non-tax federal crime under 21 U.S.C. § 841.

The Plea Agreement further includes the language that the Plea Agreement constitutes the full and complete agreement and understanding between the parties concerning Blair's guilty plea to the charge.

On October 28, 2004, a Presentence Investigation Report was provided to Plowell

and Moffatt. This report, on page 8, listed the pending March 2004 Tennessee state charge for possession of crack cocaine with intent to sell.

On the morning of the sentencing hearing, December 6, 2004, Moffatt was informed of the government's intent to bring a new Indictment against Blair on the charge originating in the March 2004 arrest for possession of crack cocaine. Defendant made an oral motion to continue the sentencing to consider whether this new Indictment would be a breach of the plea agreement. The Court granted the motion [3:04-CR-88, Doc. 16], and Blair has not been sentenced.

On December 7, 2004, Blair was indicted in the present case and charged with one count of possession with intent to distribute crack cocaine in March 2004. Plowell signed the Indictment. [Doc. 1]. On December 13, 2004, the undersigned appointed Moffatt to represent Blair in this case. [Doc. 3]. The Motion to Dismiss now before the Court was filed on January 10, 2005.

## II. POSITIONS OF THE PARTIES

The movant, Blair, asserts that the March 2004 state drug charge was a potential federal case, known by the United States Attorney's Office, when Blair executed the Plea Agreement in August 2004. As evidence of the government's knowledge of the drug offense, Blair points to Bradford's pretrial services report of July, 2004 and the presentence report of October 2004. Blair argues that the intent of the parties to the Plea Agreement was to dispose of all known charges, even if they were only state charges at the time of the Plea Agreement. Blair argues that the unequal bargaining power between the defendant and the government necessitates his interpretation of the Plea Agreement.

The government counters that it did receive the July 2004 pretrial services report and the October 2004 presentence report, and further, that it believed the information contained therein regarding the March 2004 state drug charge. However, the government argues that it still had to investigate the factual circumstances of the state charge before any decision could be made as to whether a federal charge would be brought based thereon. The government argues that a state charge does not become a federal charge until formal process, such as a Complaint or Indictment, is filed in Federal Court. Therefore, the government argues that the March 2004 state charge was not a "known non-tax federal charge within the Eastern District of Tennessee" when the parties entered into the Plea Agreement in case no. 3:04-CR-88.

## III. ANALYSIS

A plea agreement is contractual in nature and must be interpreted and enforced using traditional principles of contract law. United States v. Robison, 924 F.2d 612, 613 (6th Cir. 1991); United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir. 1986). Therefore, any dispute over the terms of the contract must be governed by objective standards of contract interpretation. Moreover, the Court must be guided by Tennessee contract law while interpreting this contract made in Tennessee. Chase Manhattan Bank v. CVE, Inc., 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002).

"There can be no contract without a 'meeting of the minds.'" Robison, supra, at 614 (citing Restatement (Second) of Contracts § 17, comment c (1981)). Whether there was a "meeting of the minds" depends on what the parties to the plea agreement intended. Id. In the absence of ambiguity, the intent of the parties to a contract should be discerned from an objective reading of its plain terms, and the agreement should be enforced to give effect to that intent. Vanderbilt

University v. DiNardo, 174 F.3d 751, 758 (6th Cir. 1999) (analyzing contract under Tennessee law). In such a case, the Court must rely upon the usual, natural and ordinary meaning of the contract's language. Planters Gin Co. v. Federal Compress & Warehouse Co., Inc., 78 S.W.3d 885, 889-90 (Tenn. 2002). Further, it is improper in such a case for the Court to go outside of the written agreement in an effort to consider a party's subjective intention or understanding not otherwise made part of the written contract. Campora v. Ford, 124 S.W.3d 624, 628-29 (Tenn. App. 2003). Finally, it is the function of the Court to interpret and enforce an unambiguous contract as it is written, notwithstanding that the contract may contain terms which may be thought harsh and unjust. General Constr. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church, 107 S.W. 3d 513, 522 (Tenn. Ct. App. 2002).

In United States v. Phibbs, 999 F.2d 1053 (6th Cir. 1993), the Court considered whether the government had breached a plea agreement which included the following language:

> If the defendant complies with the terms of this agreement, the United States will not further charge the defendant in the Eastern District of Tennessee for those non-tax-related offenses of which it presently has knowledge. It is further agreed that the defendant will not be prosecuted in the Northern District of Georgia for any non-tax-related offenses concerning action involving Bobby Joe Wilson.

999 F.2d at 1081. Afterwards, charges were filed against the defendant in the Eastern District of Kentucky. The defendant argued that the promise that he would not be prosecuted in the Eastern District of Tennessee or in the Northern District of Georgia was actually meant to signify a global resolution of his criminal exposure. The defendant asserted that government counsel made representations to that effect which were not explicitly stated in the plea agreement. When evaluating the language of the plea agreement to determine the defendant's reasonable understanding of the agreement at the time he entered the plea, the Court in Phibbs noted that "the

most persuasive evidence of what a defendant reasonably appreciated as his bargain is found in the plain language of the court-approved agreement." Id. The Court saw no reason to go beyond the "four corners" of the agreement, and accordingly, rejected the defendant's argument. Id. at 1082.

In the present case, the Court likewise finds that there is no reason to go beyond the "four corners" of the Plea Agreement. The disputed section of the document, of course, is paragraph 12 on page 5. While the clarity of the statement probably could be improved, the section is not ambiguous when the words used are given their usual and ordinary meanings.

The dispositive phrase, in the opinion of the Court, is "known non-tax federal charges." Within that phrase, the key word to be defined is "charge(s)."

Used as a noun, "charge" means "an accusation," "a formal complaint, information, or indictment." Black's Law Dictionary, 294-95 (4th ed. 1968). In wider usage, "charge" means "an accusation or indictment." The American Heritage Dictionary of the English Language, 226 (1981). Accordingly, the usual and ordinary meaning of "charge(s)" in the context of the Plea Agreement in this case refers to the actual bringing of an accusation by appropriate legal process - either indictment, complaint or information.

The Court finds that the use of the word "charge(s)," modified by the word "federal," does exclude state charges from the scope of paragraph 12 of the Plea Agreement. When the parties entered into the Plea Agreement, in August 2004, the state drug charge now in issue clearly was known to the United States. However, it was not a "non-tax federal charge" until the December 2004 Indictment.

The defendant and the government, in effect, each accuse the other of "sand bagging." The defendant argues that the government knew or should have known that the state drug

charge was at least a "potential" federal charge, but intentionally did not include it in the negotiation of the Plea Agreement. The government argues that the defendant could have included the state drug charge in the Plea Agreement, but the defendant chose to avoid the matter in the hope that the government would not pursue it. The fact of the matter is that both parties could have harbored unstated reasons for agreeing to the wording of the Plea Agreement. However, the Court's finding that the agreement is unambiguous negates any necessity to consider such extraneous matters.

## IV. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Dismiss Indictment [**Doc. 10**] be **DENIED**.[1]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

[1]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).