UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | No.: | 3:04-CR-178 |
| | ) | | (VARLAN/GUYTON) |
| MARCUS BLAIR | ) | | |

## MEMORANDUM AND ORDER

Defendant Marcus Blair is charged with possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendant was stopped for a traffic violation in the evening of March 25, 2004, after he was seen leaving a known drug house in an area of Knoxville considered to be a high drug-trafficking area. Defendant has moved to suppress [Doc. 9] all evidence and statements obtained from the stop on the grounds that the officer lacked probable cause or reasonable suspicion to stop him and also that he was detained for an unreasonable length of time while waiting for a drug detection dog to arrive. Following an evidentiary hearing on August 12, 2005, Magistrate Judge H. Bruce Guyton issued a comprehensive report and recommendation [Doc. 47] in which he recommended that defendant's motion to suppress be denied.

This case is before the Court on defendant's Objection to Judge Guyton's Report and Recommendation ("R&R") [Doc. 48], to which the government has responded [Doc. 50]. As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which the defendant has objected. The Court has carefully reviewed Judge Guyton's R&R, the transcript of proceedings before Judge Guyton [Doc. 42] and

exhibits presented, the defendant's objections, the government's response, the underlying pleadings [Docs. 9, 12, 45, 46], and considered the arguments of counsel presented on December 20, 2005. For the reasons set forth herein, the Court will overrule the defendant's objections and the motion to suppress will be denied.

I. Facts

The facts as developed through the evidence presented before Judge Guyton on August 12, 2005, are set forth in detail in the R&R and will not be repeated herein. However, the Court will restate those facts pertinent to the Court's analysis of the defendant's objections.

On the evening of March 25, 2004, Officers Joshua Munday and Jeff Holmes of the Knoxville Police Department ("KPD") were policing the Lonsdale area of Knoxville, considered to be a high drug-trafficking area. That evening the officers were watching a known drug house on Bishop Street, about which KPD had received complaints of drug traffic. Officer Munday, working undercover in plain clothes and in an unmarked police car, was parked three or four or five houses away from the suspect house and watched the house with a set of binoculars. Officer Holmes was parked at a business on Sycamore Street, watching the intersection of Sycamore and Bishop Street. The two officers were communicating via their Nextel telephones.

Officer Munday observed an older-model Chevrolet Caprice stop in front of the suspect house at approximately 10:35 p.m. A black male, later identified as the defendant,

2

got out of the car and spoke with the owner of the suspect house for fifteen to twenty minutes in front of the house. Officer Munday believed he observed the two men engage in a hand-to-hand drug transaction, although he admittedly did not see the transaction clearly enough to arrest the defendant based on what he had seen. Officer Munday then observed the defendant get back into the Chevrolet Caprice, drive past his location on Bishop Street, and roll through a stop sign without coming to a complete stop. Officer Munday testified that he was relaying to Officer Holmes everything he was seeing.

After receiving communication that defendant's car had left the suspect house, Officer Holmes saw the vehicle travel from Bishop Street onto Sycamore and began following the car. Officer Holmes stopped defendant's car at the intersection of McPherson Street for a tag light violation. Officer Holmes refused to let defendant get out of the car to look at the tag light. Officer Holmes ran a computer check on the defendant's driver's license number, which revealed that the license was valid. It appears undisputed that Officer Holmes learned that Officer Munday had seen the car roll through the stop sign at the corner of Bishop and Sycamore after Officer Holmes initiated the traffic stop. It is not entirely clear when Officer Holmes learned that Officer Munday had observed the defendant engage in a hand-to-hand drug transaction.[1] Officer Holmes asked Officer Munday to come to the scene to identify the

---

[1] It is worth noting that Officer Holmes' and Officer Munday's testimony differs on this point. Officer Munday testified that he told Officer Holmes that he observed a drug transaction and that the defendant's car had rolled through a stop sign *before* Officer Holmes initiated the traffic stop. [Doc. 42 at pp. 11-12.] Officer Holmes testified that he learned both of these facts *after* he stopped defendant's vehicle, although he also testified that he was communicating with Officer Munday "during the whole thing ... regarding a vehicle with the possible stuff going on at the house." [*Id.* at pp. 35, 57-58.]

3

defendant's car as the one he observed at the suspect house on Bishop Street and he did so. Officer Holmes also radioed for the assistance of backup officers and for a drug detection dog.

While defendant was stopped, Officer Holmes testified that defendant was fidgeting, reaching around in the car, and generally moving around inside the car. Officer Holmes also testified that the defendant seemed "unusually nervous," more so than a typical individual involved in a traffic stop. The defendant began speaking with some pedestrians and opened the car door, prompting Officer Holmes to suspect that defendant was going to flee. Officer Holmes ordered the defendant to stay in his car. Officer Holmes turned off the lights on his patrol car and observed that defendant's tag light, although working, was "very small" such that he could not read the defendant's license plate from ten feet away. [Doc. 42 at p. 45.]

Shortly after Officer Munday arrived and identified the defendant's car, the requested backup officers arrived. After the canine unit arrived, Officer Holmes instructed the defendant to get out of the car before the drug dog could enter the vehicle. While conducting a pat down of the defendant, Officer Holmes discovered a large baggie filled with several small baggies of crack cocaine in the defendant's right pant leg.

**II.     Standard of Review**

As noted previously, this Court reviews de novo the defendant's objections to Judge Guyton's R&R. The defendant first argues that Judge Guyton erroneously concluded that Officer Holmes had probable cause to stop defendant's vehicle for a tag light violation.

4

Defendant next argues that Judge Guyton erroneously concluded that Officer Holmes had reasonable suspicion to stop defendant independent of any traffic violation. Finally, the defendant argues that Judge Guyton erroneously concluded that there was reasonable suspicion to detain the defendant beyond completion of the traffic stop. The Court will review Judge Guyton's conclusions and defendant's objections on each point in turn.

### III.  Propriety of the Stop

#### A.  Probable Cause

It is well settled that if an officer "has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994). Probable cause has been defined as a probable or substantial chance or likelihood of criminal conduct. *Id*. at 392. Further, once a traffic stop is supported by probable cause, "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Id*. at 391.

The defendant complains that Officer Holmes' alleged basis for the stop, that defendant's tag light was burned out, was conclusively proven as false during the stop when Holmes later observed that the tag light was functioning. Defendant also argues that Officer Holmes could not have seen the defendant's license plate as the vehicle turned in front of him onto Sycamore from Bishop Street.

5

The Court has carefully reviewed Officer Holmes' testimony and the video from Officer Holmes' police cruiser on this point. Officer Holmes testified that he believed the defendant's tag light was burned out when he began following the vehicle on Sycamore. Officer Holmes further stated that he could not see the defendant's license plate as the defendant turned from Sycamore onto McPherson. While the defendant has raised legitimate questions regarding this testimony, Judge Guyton found Officer Holmes' testimony to be credible, a finding that this Court will not overturn. Thus, Officer Holmes' testimony that he believed the defendant's tag light was not working at the time of the stop is unrebutted.

Moreover, Officer Holmes' testified that he believed the stop was valid, even after ascertaining that the tag light was working, because the light was so dimly lit that Holmes could not read the license plate from a distance of twenty feet. This testimony is also unrebutted and defendant's argument regarding whether Officer Holmes was relying on the correct subsection of the Knoxville City Code is unavailing. Thus, the Court agrees with Judge Guyton's conclusion that Officer Holmes had probable cause to stop the defendant for a tag light violation and the defendant's objection on this point is overruled.

B.  Reasonable Suspicion

The defendant has also raised an objection to Judge Guyton's conclusion that Officer Holmes had reasonable suspicion to stop the defendant in investigating his involvement in a possible drug transaction. While this issue is not outcome determinative in light of the Court's ruling on the question of probable cause, the Court has nevertheless reviewed the R&R and defendant's objection on this point.

6

After carefully reviewing the transcript of testimony, the Court is constrained to agree with Judge Guyton's conclusion that Officer Holmes had reasonable suspicion to stop the defendant's vehicle to investigate his involvement in a possible drug transaction. As noted by Judge Guyton, Officer Holmes' testimony is not clear on precisely when he learned that Officer Munday had observed a hand-to-hand drug transaction. On direct examination, Officer Holmes testified that he was informed of the possible hand-to-hand transaction *after* he had stopped defendant's vehicle. [Doc. 42 at pp. 35, 41.] On cross examination, however, Officer Holmes stated several times that he was having conversations with Officer Munday throughout this time period as to what Officer Munday observed at the suspect house. [*See id.* at p. 57-58 ("During the whole thing I was carrying on conversations with Officer Munday regarding a vehicle with the possible stuff going on at the house, the vehicle leaving from the residence."); p. 61 (I was carrying on a conversation via Nextel with Officer Munday prior to the stop also about a vehicle and everything up there at the residence."); p. 65 ("At this point from what I was being told via Nextel there could be a possibility of some hand-to-hand transaction going on."); p. 69 ("I was talking with my partner Officer Munday via Nextel during the whole time of the traffic stop or part of the traffic stop regarding what was going on up there at the hand-to-hand transaction that possibly occurred from the suspect vehicle and a resident at the house.")] Thus, there is some evidence that Officer Holmes knew of the hand-to-hand transaction prior to the traffic stop. At a minimum, Officer Holmes was certainly aware that defendant's vehicle had just left a known drug house in a high drug trafficking area late at night. Therefore, the Court agrees that Officer Holmes had

7

reasonable suspicion to stop the defendant independent of any traffic violation and the defendant's objection on this point is overruled.

**IV.     Length of Detention**

The defendant's final objection is to Judge Guyton's conclusion that defendant was not unreasonably detained in violation of the Fourth Amendment. The legal issue is whether Officer Holmes had reasonable suspicion to continue to detain the defendant after the initial purpose of the traffic stop was concluded. *See United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000). As noted by Judge Guyton, the defendant was detained a total of eighteen additional minutes after Officer Holmes admittedly had sufficient information to complete the citations for the traffic stop. Thus, defendant disputes whether Officer Holmes had reasonable suspicion to investigate other criminal activity.

As noted above, there is some evidence that Officer Holmes knew of the hand-to-hand transaction prior to the traffic stop and he certainly was aware of that fact after stopping the defendant's vehicle. Officer Holmes knew that defendant's vehicle had just left a known drug house in a high drug trafficking area late at night. Further, he testified that defendant was nervous, fidgeting, moving around in his car, and reaching under the seat. While any of these facts in isolation would not support a finding of reasonable suspicion, consideration of these facts as part of the totality of circumstances support Officer Holmes' reasonable suspicion that a crime had occurred. *See United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). The Court also agrees that Officer Holmes acted diligently in investigating his

8

reasonable suspicion while taking appropriate precautions for his own safety. Thus, the Court agrees that the length of detention beyond the conclusion of the purposes of the traffic stop was not unreasonable and did not violate the Fourth Amendment. The defendant's objection on this point is overruled.

## V. Conclusion

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation of Judge Guyton whereby defendant's motion to suppress [Doc. 9] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE